UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

RAYMOND MASSI and CLIFFORD CULMER,
in their joint capacities as Court-Appointed
Receivers and Court-Appointed Liquidators,

        Plaintiffs,

v.                             **MEMORANDUM OF LAW & ORDER**
                               Civil File No. 09-1821 (MJD/JJG)

LOWELL HOLDEN,

        Defendant.
_____

Michelle Kreidler Dove, Monica L. Clark, and Todd C. Pearson, Dorsey & Whitney, LLP, Counsel for Plaintiffs.

Bruce A. Rasmussen, Rasmussen & Associates, Counsel for Defendant.
_____

I.        **INTRODUCTION**

       This matter is before the Court on Defendant's Motion to Set Aside the Clerk's Entry of Default [Docket No. 8] and Plaintiffs' Motion for Default Judgment [Docket No. 9]. The Court heard oral argument on April 9, 2010.

1

## II. BACKGROUND

### A. Factual Background

Based on the evidence currently before the Court: Plaintiff Raymond Massi is a Canadian citizen and a partner in RSM Richter, Inc., a Canadian accounting firm. Plaintiff Clifford Culmer is a citizen of the Commonwealth of The Bahamas and a partner of BDO Mann Judd, an accounting firm located in Nassau, The Bahamas. Massi and Culmer are the Canadian and Bahamian court-appointed receivers and liquidators for a group of entities collectively called the Norshield Receivership Companies.

According to Massi, the Norshield Receivership Companies used a complex corporate and investment structure involving corporations in multiple foreign jurisdictions. He asserts that, after passing through a number of entities, almost all of the funds of the 1,900 Canadian retail investors were purportedly invested in Mosaic Composite Limited, located in The Bahamas ("Mosaic (Bahamas)"). Massi claims that Mosaic (Bahamas) then moved to another jurisdiction and then to the United States, where it became known as Mosaic Composite Limited (U.S.), Inc. ("Mosaic (U.S.)"). Defendant disputes these facts.

According to Plaintiffs, Defendant Lowell Holden is the sole director and

sole officer of Mosaic (U.S.). Massi avers that Massi and Culmer have determined that Holden caused Mosaic (U.S.) to make illegal payments to benefit himself and others without the consent or direction of the Joint Receivers and Liquidators. In total, Massi and Culmer claim that Holden has wrongfully advanced or transferred at least $560,015 (Canadian) and $795,722 (U.S.) (collectively, "the Transferred Funds").

On September 29, 2008, Bruce A. Rasmussen, who now represents Holden, received a letter from Monica L. Clark, of Dorsey & Whitney, who represents Massi and Culmer, stating that she represented the Joint Receivers and Joint Official Liquidators of Mosaic (U.S.). Clark stated that Massi and Culmer were asserting that Holden, in his capacity as director of Mosaic (U.S.), made a series of illegal transfers. The letter stated that, if Holden failed to return the money, Massi and Holden would exercise their legal rights.

Rasmussen had previously represented a corporation of which Holden was an officer in another matter in which Clark represented the other party. Rasmussen conferred with Holden and Holden told him that Mosaic (U.S.) had never had any contact with the Commonwealth of The Bahamas.

On October 17, 2008, Rasmussen sent a letter to Clark stating that he would

3

respond to Massi and Culmer's demand if he received satisfactory evidence of their jurisdiction over Mosaic (U.S.). Rasmussen avers that Clark did not respond to his letter, so he believed that the matter was closed.

### B. Procedural History

On July 14, 2009, Massi and Culmer filed a Complaint against Holden in this Court. The Complaint alleges Count One: Actual Fraudulent Conveyance; Count Two: Constructive Fraudulent Conveyance; Count Three: Conversion; and Count Four: Breach of Fiduciary Duty.

The Summons and Complaint were personally served on Holden on July 27, 2009. The deadline to answer was August 17, 2009, but Holden failed to answer or otherwise appear.

Sometime in August 2009, Holden called Rasmussen by telephone and told him that he had been served with a Summons and Complaint in this action. Rasmussen asked about the date of service and mistakenly docketed the deadline for service of the Answer as August 26, 2009. Rasmussen met with Holden and reviewed the Complaint and documentary evidence. Because the case was complex, Rasmussen determined that he would require additional time to prepare the Answer. On August 19, after the deadline to answer had already

4

passed, he wrote a letter to Clark and requested an extension to respond until September 9, 2009. At that point, Rasmussen still believed that his Answer was not due until August 26.

On August 20, 2009, Plaintiffs filed an Application for Entry of Default. On August 21, 2009, at 9:02 a.m., the Clerk entered default against Holden. Sometime later on August 21, Plaintiffs' counsel received the letter from Rasmussen dated August 19, requesting a two-week extension of time to answer "to September 9, 2009."

Clark informed Rasmussen that she had just received his letter and that the Clerk had already entered default that day. At this point, Rasmussen discovered his mistake regarding the deadline to answer.

On August 31, 2009, Rasmussen sent Dove an email explaining that he had incorrectly docketed the response deadline and indicating that he would move to vacate the default as soon as he could.

On September 3, 2009, Plaintiffs filed a Motion for Default Judgment without a supporting memorandum or other documents.

On September 8, 2009, Rasmussen filed a Notice of Appearance on behalf of Holden.

On September 10 or 11, Rasmussen sent a letter to Clark asking that she stipulate to set aside the Clerk's entry of default. On September 15, 2009, Holden filed a Motion to Set Aside Default without any supporting documentation.

Rasmussen asserts that, at some point, he received a telephone call from Todd C. Pearson, of Dorsey & Whitney, stating that he was lead counsel in this case that the case, could possibly be settled and Pearson would discuss the matter with his client.

On September 28, 2009, Rasmussen emailed Pearson and asked for an email back about his thoughts on settlement. Pearson then called Rasmussen and stated that, although he did not have the authority to make an offer, it might be possible for Plaintiffs to release Holden in return for releases by Holden and unnamed corporations.

On October 6, 2009, Rasmussen emailed Pearson and told him that he would meet with Holden the next week to discuss Pearson's suggestion. On October 16, Rasmussen wrote Pearson and stated that Holden, without Rasmussen's consent, had contacted Massi and had discussions regarding the possibility of a global settlement involving the current case and a separate claim by Holden against Plaintiffs. Rasmussen told Pearson to notify him if he had any

6

objections to continued discussions by the parties. Pearson did not respond to Rasmussen.

On December 2, 2009, Rasmussen emailed Pearson and asked for a response to the Court's suggestion to set a hearing date on the unsupported motions to set aside the default and for default judgment or that the motions be dismissed. Pearson did not respond.

Rasmussen avers that he has prepared Defendant's Answer and Counterclaim, but cannot serve it due to the Clerk's entry of default.

On January 7, 2010, Plaintiffs filed a new Motion for Default Judgment along with the required supporting documents and requested a hearing date from the Court. On February 10, 2010, Holden filed a memorandum in support of his Motion to Set Aside Default, along with supporting documents. Both parties' motions are now fully briefed.

## III. DISCUSSION

### A. Legal Standards

#### 1. Standard to Set Aside Entry of Default

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause." The standard to set aside an entry of default requires less of a showing of excuse than is required to vacate a default judgment. Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). In deciding whether good cause exists, the Court considers "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." Id. at 784 (citations omitted). The Court should "focus heavily on the blameworthiness of the defaulting party," and "distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." Id.

> There is a judicial preference for adjudication on the merits, and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits.

Id. (citations omitted).

### 2. Standard for Entry of Default Judgment

Default judgment is appropriate when a defendant fails to answer the complaint or otherwise defend the action. Fed. R. Civ. P. 55. Generally, "[d]efault judgment is appropriate where the party against whom the judgment is sought has engaged in willful violations of court rules, contumacious conduct, or intentional delays. However, default judgment is not an appropriate sanction for a marginal failure to comply with time requirements." Forsythe v. Hales, 255 F.3d 487, 490 (8th Cir. 2001) (citations omitted). The decision of whether to enter default judgment is within the discretion of the Court. Id.

B. Discussion

1. **Blameworthiness of Holden: Intentional Delay Versus Marginal Failure**

Holden mistakenly docketed the time to answer Plaintiffs' Complaint. He demonstrated an intent to answer by sending a letter to Plaintiffs' counsel requesting a two-week extension, asking Plaintiffs to stipulate to vacating the default, and explaining his mistake. His numerous filings with regard to the two pending motions demonstrates that he has not intentionally flaunted Court rules and that, instead, he seeks to litigate this case on the merits. Holden is ready and willing to file an Answer and Counterclaim, but has been prevented from doing

9

so by the entry of default.

### 2. Existence of a Meritorious Defense

Holden has set forth meritorious defenses to this lawsuit. Generally, he claims that Mosaic (U.S.) is not a continuation of Mosaic (Bahamas). Holden also asserts that Mosaic (U.S.) did not derive most of its funding from Mosaic (Bahamas). Holden further notes that Massi's affidavit is not based on personal knowledge, but instead, bases its vague assertions of diversion of funds based "upon information and belief."

### 3. Prejudice to Plaintiffs

The Court concludes that Plaintiffs have not suffered any prejudice from Holden's delay. Plaintiffs did not demonstrate a need for urgency, but instead engaged in settlement negotiations and filed an unsupported motion for default judgment, waiting four months to file supporting documentation and obtain a hearing date.

> Entry of default raises no protectable expectation that a default judgment will follow, and a party's belief in the integrity of the system must include, to be reasonable, knowledge that a system of integrity makes exceptions for good cause shown. As numerous decisions make clear, prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits. Setting aside a default must prejudice plaintiff in a

more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.

Johnson, 140 F.3d at 785 (citations omitted).

### C. Conclusion

The Court grants Holden's motion to set aside entry of default. All factors weigh in favor of finding good cause. Holden's error in docketing the due date for the answer was marginal; he has clearly and consistently demonstrated his intention to litigate this lawsuit on the merits; he has set forth a meritorious defense; and Plaintiffs will not be prejudiced by the delay. These same considerations, as well as the large sum of damages sought against an individual defendant, lead the Court to deny Plaintiffs' motion for default judgment.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Set Aside the Clerk's Entry of Default [Docket No. 8] is **GRANTED**.

2. Plaintiffs' Motion for Default Judgment [Docket No. 9] is **DENIED**.

Dated: April 16, 2010                     s/Michael J. Davis
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court