UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

RAYMOND MASSI and CLIFFORD CULMER,
in their joint capacities as Court-Appointed
Receivers and Court-Appointed Liquidators,

       Plaintiffs,

v.                               **MEMORANDUM OF LAW & ORDER**
                                Civil File No. 09-1821 (MJD/JJG)

LOWELL HOLDEN,

       Defendant.

---

James K. Langdon, Monica L. Clark, and Shannon L. Bjorklund, Dorsey & Whitney, LLP, Counsel for Plaintiffs.

Bruce A. Rasmussen, Rasmussen & Associates, Counsel for Defendant.

---

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment Dismissing Counterclaims. [Docket No. 73] The Court heard oral argument on October 7, 2011. For the reasons that follow, the Court grants Plaintiffs' motion.

## II.    BACKGROUND

### A.    Factual Background

1

1.     **The Norshield Companies and the History of Mosaic**

Norshield Emerging Markets Limited was originally incorporated as a Bahamian International Business Company ("IBC") on January 27, 1997. On June 16, 1999, it changed its name to Norshield Composite Limited. On May 9, 2001, it changed its name to Composite Limited. On May 23, 2003, it changed its name to Mosaic Composite Limited.

On March 4, 2005, Mosaic Composite Limited migrated to Anguilla and continued in Anguilla as an Anguillan IBC. At that time, the Norshield group was experiencing severe financial difficulties. The Norshield group was an intertwined group of investment companies including the Norshield companies in Canada and Mosaic Composite Limited and Olympus Univest Ltd. A Canadian receivership was created for the Canadian Norshield companies ("Norshield Companies Receivership").

In the meantime, Defendant and Counterclaimant Lowell Holden, a Minnesota resident who works in financial restructuring, claims that, in May 2005, he was approached to provide financial restructuring services to Mosaic Composite Limited, at that time, an Anguillan IBC. He decided to merge the Anguillan company into a pre-existing Minnesota corporation under which he had been conducting business so that he could conduct the restructuring services

in Minnesota. The Minnesota corporation was organized on April 14, 2004, as Turfcoat, Inc. Its name was changed to Sarbox Solutions, Inc., on December 16, 2004. It had conducted business under both names.

In anticipation of the merger, on June 1, 2005, Sarbox Solutions, Inc., filed, with the Minnesota Secretary of State, Amended and Restated Articles of Incorporation including changing the name of the corporation from Sarbox Solutions, Inc., to Mosaic Composite Limited (U.S.), Inc. ("Mosaic Minnesota").

On June 3, 2005, Mosaic Composite Limited merged with Mosaic Minnesota to become Mosaic Minnesota. Mosaic Composite Limited ceased to exist. Holden admits that all of the assets and liabilities of Mosaic Composite Limited ran to Mosaic Minnesota. The shareholders of Mosaic Composite Limited became shareholders of Mosaic Minnesota.

Holden asserts that he began the Mosaic restructuring process in June 2005, collecting money from Mosaic Composite Limited's accounts and the accounts of a related entity, Mosaic Titan Fund, Ltd., a Bahamian IBC that Holden also merged into Mosaic Minnesota. Holden claims that Mosaic Minnesota has never conducted business in the Bahamas.

By letter dated November 14, 2005, Holden redeemed Mosaic Minnesota's preference shares from the Liquidator of Olympus Univest Limited, which was in voluntary liquidation in the Bahamas, by agreeing to a Bahamian consent judgment in the amount of U.S. $3,500,000, which included the following provision:

> Further, it is agreed that this consent to judgment is only to assets owned by Mosaic Composite Limited (US), Inc. within the Bahamas as noted by Mr. Gregory Moss in his written communication to us. Mosaic Composite Limited (US), Inc. is also owed from Premier unpaid dividends in excess of four hundred thousand dollars. This consent does not apply to any assets of Mosaic Composite Limited (US), Inc. outside the Bahamas.

### 2.     The Receivership

Plaintiff Raymond Massi is a Canadian citizen and a partner of the Canadian accounting firm RSM Richter Inc. Plaintiff Clifford Culmer is a citizen of the Commonwealth of the Bahamas and is a partner in the Bahamian accounting firm of BDO Mann Judd. On January 20, 2006, the Supreme Court of the Commonwealth of the Bahamas named Massi and Culmer as Joint Receivers of Mosaic Minnesota. On March 22, 2006, the court named Massi and Culmer Joint Provisional Liquidators of Mosaic Minnesota. On January 23, 2007, the court named Massi and Culmer Joint Official Liquidators of Mosaic Minnesota.

The Bahamian court was aware of Mosaic Minnesota's corporate history. For example, on March 17, 2006, Olympus Univest Limited's Petition to Wind Up Mosaic described the migration and merger:

> On 4th March, 2005, Mosaic Composite Limited migrated to Anguilla and continued there as an Anguillan IBC. In April 2005 Mosaic Composite Limited was struck off the Bahamian Register under Section 84 of the [IBC] Act. On 3rd June, 2005 Mosaic Composite Limited merged with Mosaic Composite Limited (U.S.) Inc. (a Minnesota company) which is now the current "Mosaic" entity.

On March 22, 2006, after receiving this petition, the Supreme Court of the Bahamas issued an order appointing Plaintiffs as Joint Provisional Liquidators and ordering the wind up of Mosaic Minnesota.

Holden was aware of the Bahamian action but chose not to participate. (See Feb. 28, 2011, Holden Dep. 15-18.) He was also aware of the Bahamian court's orders, but authorized transfers from Mosaic Minnesota because he did not believe that the Bahamian court had authority to issue those orders. (Id.)

**B.    Procedural History**

On July 14, 2009, Massi and Culmer filed a Complaint against Holden in this Court. The Complaint alleges Count One: Actual Fraudulent Conveyance; Count Two: Constructive Fraudulent Conveyance; Count Three: Conversion; and

Count Four: Breach of Fiduciary Duty.  Plaintiffs allege that Holden has caused Mosaic to make payments without the consent of the Joint Receivers and Liquidators and to make loans or incur expenses on behalf of Mosaic.  Holden asserts that the purpose of the Complaint was to intimidate Holden into withdrawing a claim controlled by him in the Norshield Companies Receivership.

In his First Amended Answer and Counterclaim, Holden asserts four counterclaims: Counterclaim Count One: Conversion; Counterclaim Count Two: Accounting; Counterclaim Count Three: Malicious Prosecution; and Counterclaim Count Four: Intentional Infliction of Emotional Distress.  [Docket No. 42]  Holden's claims are based on the allegation that Plaintiffs took possession of assets owned by Mosaic Minnesota and distributed them to other parties, including RMS Richter as Receiver for the Norshield Receivership Companies.  Each counterclaim is based on the allegation that Plaintiffs "do not and never have had the rights of a receiver over the property and funds of Mosaic" Minnesota.  (Counterclaim ¶ 28; see also id. ¶ 38, 44, 52.)

Plaintiffs now move for partial summary judgment, asking the Court to dismiss Defendant's Counterclaims with prejudice.

### III.   DISCUSSION

#### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

#### B.   Underlying Issue: Validity of the Bahamian Receivership

All four of Defendant's counterclaims rest on his allegation that Plaintiffs "do not and never have had the rights of a receiver over the property and funds of Mosaic" Minnesota.  (Counterclaim ¶ 28; see also id. ¶¶ 38, 44, 52.)  If this contention is false, all of the counterclaims fail.  Plaintiffs claim that the Supreme Court of the Commonwealth of the Bahamas ruled on this precise issue more

than five years ago, and Holden failed to challenge the receivership in that court. Plaintiffs conclude that the current counterclaims represent an impermissible collateral attack on the Bahamian receivership.

The question before the Court is: should this Court recognize the Bahamian proceedings under the theory of comity?

### C.     Comity Standard

The Supreme Court has defined comity as: "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."  Hilton v. Guyot, 159 U.S. 113, 143 (1895).  "Although comity eludes a precise definition, its importance in our globalized economy cannot be overstated."  Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 360 (8th Cir. 2007).  See also Hansen v. Am. Nat'l Bank, 396 N.W. 2d 642, 646 (Minn. Ct. App. 1986) ("When the determination is by a court of a foreign nation, that judgment is still recognized, not out of full faith and credit, but as a matter of comity.  Minnesota has recognized the validity of foreign judgments and their res judicata effect.").

Holden's counterclaims against Plaintiffs are based on diversity jurisdiction. In a diversity case, state law determines the question of whether a foreign judgment should be given preclusive effect. Shen v. Leo A. Daly Co., 222 F.3d 472, 476 (8th Cir. 2000); Nicol v. Tanner, 256 N.W.2d 796, 800 (Minn. 1976). If state law does not provide sufficient guidance, the federal court will look to federal law. Shen, 222 F.3d at 476.

Under Minnesota law, a foreign judgment is enforceable unless the foreign court lacked jurisdiction; there was a lack of reasonable notice and opportunity to be heard; there was fraud; the underlying cause of action is contrary to the public policy of Minnesota; or the foreign court was incompetent or violated its own law in entering judgment. Nicol, 256 N.W.2d at 801-02, 802 n.11.

Similarly, under federal law,

> [a] judgment should be enforced and not retried if the foreign forum: (1) provided a full and fair trial of the issues in a court of competent jurisdiction; (2) ensured the impartial administration of justice; and (3) ensured the trial was without prejudice or fraud. The foreign court must also have proper jurisdiction over the parties and the judgment must not violate public policy. The burden of proof in establishing that the foreign judgment should be recognized and given preclusive effect is on the party asserting it should be recognized.

Shen, 222 F.3d at 476 (citations omitted).

### D. Comity and Foreign Receiverships

There is a long and consistent precedent of deferring to receivership orders issued by a properly-instituted court of a foreign country that has jurisdiction, even when they are not final judgments. Plaintiffs point to examples where foreign, and even Bahamian, receivership orders have been enforced in federal court. See In re Culmer, 25 B.R. 621, 627 (Bankr. S.D.N.Y. 1982) (granting comity to a Bahamian court's liquidation proceedings); In re Colorado Corp., 531 F.2d 463, 468-69 (10th Cir. 1976) (holding that it was an abuse of discretion for trial court to deny comity to receiverships created by Luxembourg and the Netherland Antilles courts).

Foreign court judgments are enforceable even when the defendant fails to appear and the court issues a default judgment. See Nicol, 256 N.W.2d at 802 ("As a matter of law . . . the default status of the [foreign] judgment, if reasonable notice and opportunity to be heard were afforded, and other requirements of basic fairness were met, should not affect the force of the judgment.").

### E. Personal Jurisdiction

The Court will not grant comity to a foreign proceeding if the foreign court acted outside its jurisdiction. See, e.g., Traders Trust Co. v. Davidson, 178 N.W.

735 (Minn. 1920) (holding Canadian judgment against Minnesota resident was void when Canadian court did not have personal jurisdiction over Minnesota resident). In this case, the Bahamian court had jurisdiction over Mosaic Minnesota.

Mosaic Composite Limited was a Bahamian corporation that only moved to Anguilla just prior to the collapse of the Norshield group and then merged with Mosaic Composite Limited (U.S.), Inc. to become Mosaic Minnesota. In the Bahamian proceedings, the Bahamian petitioners asserted that the Bahamian IBC Act "preserve[d]" the Bahamian court's jurisdiction "notwithstanding [Mosaic's] ultimate migration to Minnesota." (2006 Petition of Olympus Univest Limited to Wind Up Mosaic ¶ 4.) In response, the Bahamian court appointed Massi and Culmer as provisional and, later, official, liquidators and granted them authority to wind up "Mosaic or howsoever called" pursuant to the IBC Act. (Mar. 22, 2006, Bahamian Court Order; Jan. 23, 2007, Bahamian Court Order ¶ 1.) The Bahamian court analyzed Bahamian law and determined that its exercise of personal jurisdiction was warranted.

Plaintiffs further point out that the Bahamian court was also overseeing the voluntary liquidation of Olympus Univest Ltd., a Bahamian corporation.

11

(See First Massi Aff., Ex. D, Mar. 17, 2006 Petition of Olympus Univest Limited to Wind Up Mosaic ¶ 7.)  Plaintiffs contend that the Bahamian court had jurisdiction over Mosaic Minnesota both as a part of the Olympus Univest Ltd. Liquidation (Olympic Univest Ltd. being a shareholder of Mosaic Composite Limited), and because Mosaic Minnesota was a former Bahamian corporation that voluntarily submitted itself to the laws of the Bahamas.  Compare In re Colorado Corp., 531 F.2d at 465 (enforcing a foreign court's order that appointed a receiver to recover a corporation's assets "anywhere in the world").

     The Court concludes that the Bahamian court had personal jurisdiction over Mosaic Minnesota based on its merger with Mosaic Composite Limited, upon whose actions the Bahamian case is based.  The Bahamian court's jurisdiction is supported by the Bahamian IBC Act of 2000.  This conclusion is wholly consistent with U.S. and Minnesota law.  "[P]ersonal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's law."  Mid-Continent Eng'g, Inc. v. Toyoda Mach. USA, Corp., Civil No. 07-3892 (DSD/SRN), 2009 WL 1272142, at *2 (D. Minn. May 5, 2009) (citations omitted).

In February 2005, the Bahamian court indisputably had personal jurisdiction over Mosaic Composite Limited, which was a Bahamian corporation. In March 2005, Mosaic Composite Limited migrated to Anguilla and, within months, merged with Mosaic Minnesota, in the midst of the collapse of the Norshield group. Under the minimum contacts analysis employed in U.S. courts, the Bahamian court could exercise jurisdiction over Mosaic Minnesota as the successor to Mosaic Composite Limited for an action based on Mosaic Composite Limited's actions as a Bahamian corporation acting in the Bahamas. See, e.g., City of Richmond, Va. v. Madison Mgmt. Group, Inc., 918 F.2d 438, 454 (4th Cir. 1990) ("The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor whenever forum law would hold the successor liable for its predecessor's actions.") (citations omitted); Duris v. Erato Shipping, Inc., 684 F.2d 352, 356 (6th Cir. 1982) (holding that, under Ohio corporate law, after merger, personal jurisdiction exists over surviving corporation if there is personal jurisdiction over constituent corporation and the lawsuit is based on constituent corporation's pre-merger actions); Hagan v. Val-Hi, Inc., 484 N.W.2d 173, 178 (Iowa 1992) (finding personal jurisdiction over

successor corporation after successive mergers based on the personal jurisdiction over the original corporation).

Under Minnesota merger law,

> the surviving organization is responsible and liable for all the liabilities and obligations of each of the constituent organizations. A claim of or against or a pending proceeding by or against a constituent organization may be prosecuted as if the merger had not taken place, or the surviving organization may be substituted in the place of the constituent organization.

Minn. Stat. § 302A.641, subd. 2(e). Therefore, under Minnesota law, Mosaic Minnesota is liable for the actions of Mosaic Composite Limited that occurred in the Bahamas. Personal jurisdiction over Mosaic Minnesota based on the actions of Mosaic Composite Limited would be justified under Minnesota law.

### F. Notice

Holden admits that he received notice of the Bahamian action and decided to not participate. The record also contains proof of formal service on Holden. Holden chose not to enter an appearance or challenge the jurisdiction of the Bahamian court and took actions that he knew violated the orders of the Bahamian court, based on his belief that the Bahamian court lacked jurisdiction over Mosaic Minnesota. There is no question that Mosaic Minnesota and Holden could have been heard in the Bahamian proceedings, if they had so desired.

G.  **Procedure, Fairness, and Lack of Fraud in the Bahamian Court**

There is no evidence before the Court that would impugn the overall fairness of the Bahamian legal proceedings.  See also In re Culmer, 25 B.R. at 630-31 (describing Bahamian notice requirements and procedural protections and describing the Bahamas as "a sister common law jurisdiction with procedures akin to our own") (citation omitted); Ratner ex rel. JMV Fixed Income Arbitrage Performance Partners, Ltd., No. 08-0495-CV-W-HFS, 2008 WL 3834075, at *2 (W.D. Mo. Aug. 13, 2008) (noting that the court could find no cases where federal courts have disregarded foreign rulings on the basis that they violate due process "where the foreign court was part of the Anglo-American system of justice"). Holden received notice of various stages of the Bahamian proceedings and chose not to appear.

IV.  **CONCLUSION**

Under both Minnesota and federal law, courts enforce foreign judgments and receiverships under the principle of comity, so long as personal jurisdiction exists; there was notice and the opportunity to be heard; there is no showing of fraud; and there is no other indication of fundamental unfairness or lack of power by the foreign court.  Here, all of the aforementioned factors have been

met. There is no reason to disregard the Bahamian court's receivership order. The Court grants comity to the Bahamian court and holds that Plaintiffs were properly appointed as receivers. With that holding, all of Holden's counterclaims against Plaintiffs, based on their actions as receivers, fail.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Partial Summary Judgment Dismissing Counterclaims [Docket No. 73] is **GRANTED**.

Dated: December 13, 2011        s/ Michael J. Davis
                                Michael J. Davis
                                Chief Judge
                                United States District Court